RAILROAD COMMISSION OF TEXAS ET AL V. TEXAS & PACIFIC
RAILWAY COMPANY ET AL.

No. 7800.  Decided November 19, 1941.
Rehearing overruled January 14, 1942.
(157 S. W., 2d Series, 622.)

*Gerald C. Mann,* Attorney General, *Geo. W. Barcus, Ocie Speer,* and *Zollie C. Steakley,* Assistants Attorney General, for plaintiffs in error.

*R. S. Shapard, C. C. Huff, Adair Dyer* and *Ralph W. Currie,* all of Dallas, *Baker, Botts, Andrews & Wharton* and Andrews, *Kelley, Kurth & Campbell,* all of Houston, and *Herbert L. Smith,* of Austin, for defendants in error.

*Jo E. Shaw,* of Houtson, *John H. Benckenstein,* of Beaumont, and *Rawlings & Sayers,* of Fort Worth, filed briefs as amici curiae.

MR. JUSTICE CRITZ delivered the opinion of the Court.

On November 11, 1936, Thomas G. Hunter filed with the Railroad Commission of Texas an application for a permit to operate under Section 6, subdivision (d), Article 911 (b), Vernon's Texas Civil Statutes, as a motor carrier of certain special commodities, namely, household goods, livestock, livestock feedstuff, timber when in its natural state, farm machinery, and grain from Texarkana, Texas, to and from all points within the State of Texas, and oil field equipment to and from all points within the State of Texas.

On the 8th day of January, 1937, the Commission, after due notice, conducted through its duly constituted examiner a hearing in the City of Fort Worth, Texas, and on March 8, 1937, the Commission entered an order granting the above application, in part. The permit, as issued, is set out in the opinion of the Court of Civil Appeals, and in the interest of brevity will not be repeated here.

It appears that Texas & Pacific Railway Company and five other railroad companies and one common carrier motor carrier of freight over Texas highways appeared at the above hearing and contested Hunter's application. On the hearing before the examiner the contestants above mentioned objected to Hunter's application on the ground that it did not comply with the provisions of our motor carrier law (Acts Reg. Sess., 41st Leg. ch. 277, p. 480) applicable to both common and contract carriers. Also, such contestants offered to show but were denied the opportunity of showing that public convenience and necessity did not require the additional service over our highways, as contained in either Hunter's application as filed or his permit as issued. In this connection, it is undisputed that in granting Hunter's permit the Commission's examiner heard evidence on, and considered only the question of, whether the condition of the highways involved, and the use thereof by the public, would permit the additional burden imposed by Hunter's operations. The Commission's examiner refused to hear evidence on, or to consider, the question as to whether public convenience and necessity required the issuance of Hunter's permit as applied for or issued.

After the happening of the above events the Texas & Pacific Railway Company et al filed this suit in the 53rd District Court of Travis County, Texas, under authority of Section 20 of Article 911(b), Vernon's Texas Statutes, to cancel and annul Hunter's permit above described. On final trial in the district

court judgment was entered for the Commission and Hunter, sustaining this permit as issued. On appeal by Texas & Pacific Railway Company et al to the Austin Court of Civil Appeals that court reversed the judgment of the district court, cancelled Hunter's permit, and remanded this cause to the district court for such ancillary relief as might be appropriate. 138 S. W. (2d) 927. This case is before this Court on writ of error granted on application of the Commisison and Hunter.

If we properly interpret the opinion of the Court of Civil Appeals, it holds that this permit was illegal in its inception because the Commission failed and refused to hear evidence on, or to consider, the question of public convenience and necessity for its issuance. As we further interpret such opinion, it holds that Section 6(d), Chapter 277, Acts Reg. Sess., 1931, p. 480, carried as amended as Section 6(d) of Article 911(b), Vernon's Texas Statutes, when considered with other pertinent statutes on the same subject, requires and contemplates that the Commission shall hear evidence and consider the question of public convenience and necessity in its hearings on applications for permits under the above-named statute. This Court granted the writ in this case to review the above holding "on account of the importance of the question."

■ After this Court granted the writ of error in this case, and while it here pended for decision, the Legislature of this State enacted H. B. No. 351, Ch. 442, Acts Reg. Sess., 47th Leg., 1941, p. 713, effective June 4, 1941. Section 3 of this Act expressly amends Section 6(d) of Chapter 277, Acts Reg. Sess., 42nd Leg., as amended by Sec. 1 of Ch. 321, Acts Reg. Sess., 45th Leg., so as to expressly require the Commission to conduct hearings on applications for "Specialized Motor Carrier" certificates, and to require a showing "by substantial evidence that there exists a public necessity for such service, and that public convenience will be promoted by the granting of said application." Section 6(d), as contained in the Acts of 1941, supra, also expressly requires "that the order of the Commission granting said application, and the certificate issued thereunder shall set forth in its order findings of fact pointing out the inadequacies of the service of the existing carriers and the public need for such proposed service." It is therefore evident that by the express provisions of the Act of 1941 the Commission must meet the requirements laid down by the opinion of the Court of Civil Appeals in this case in all hearings for certificates under Section 6(d) after the effective date of the Act

of 1941. Simply stated, the Act of 1941 expressly requires a hearing and substantial evidence therein showing public convenience and necessity for the granting of certificates under Section 6(d), supra.

The Act of the 47th Legislature, 1941, Section 4, also amends "House Bill No. 654, Acts of the Regular Session, Forty-first Legislature, 1929, page 698, Chapter 314, as amended by House Bill No. 335, Acts of the Regular Session, Forty-second Legislature, 1931, page 480, Chapter 277, as amended," so as to add Section 5a thereto. Section 5a of the 1941 Act is divided into several subdivisions. We are here directly concerned with subdivision (b) thereof. It is as follows:

"(b) No motor carrier shall transport oil field equipment, household goods, used office furniture and equipment, livestock, milk, livestock feedstuff, grain, farm machinery, timber in its natural state, wool or mohair, on any highway in this State unless there is in force with respect to such carrier and such carrier is the owner or lessee of a certificate of convenience and necessity issued pursuant to a finding and containing a declaration that a necessity requires such operation or a contract carrier permit issued by the Commission, authorizing the transportation of such commodity or commodities; providing that nothing herein shall modify, restrict, or add to, the authority of the common carrier motor carriers operating under certificates of convenience and necessity issued by the Commission, nor shall any person who now holds or who may hereafter hold a certificate of convenience and necessity to operate as a common carrier be granted any certificate of convenience and necessity to operate as a Specialized Motor Carrier; provided further that any person to whom a 'Special Commodity' permit for the transportation of any or all of said commodities had been issued under the provisions of Section 6, paragraph (d), Article 911b, Title 25, Revised Civil Statutes of the State of Texas, 1925, as amended, if such 'Special Commodity' permit shall have been in force and effect on January 1, 1941, and if such person or predecessor in interest may desire to continue in the business of a motor carrier of such commodity or commodities shall file an application for a certificate of convenience and necessity under the terms of this Act within sixty (60) days after the effective date hereof, it shall be the duty of the Commission to issue without further proof a certificate authorizing the operation as a 'Specialized Motor Carrier' for the transportation of such commodity or commodities covered by

the 'Special Commodity' permit held by the applicant, which 'Specialized Motor Carrier' certificate shall be issued to the applicant and include all the rights and privileges granted under said 'Special Commodity' permit."

For the purpose of this opinion we shall assume, without deciding, that the Court of Civil Appeals was correct in holding that this permit was illegal in its inception because issued without a hearing on the question of public convenience and necessity.

■ It will be noted that subdivision (b) of Section 4, Acts 47th Legislature, 1941, above quoted, expressly provides: "that any person to whom a 'Special Commodity' permit for the transportation of any or all of said commodities had been issued under the provisions of Section 6, paragraph (d), Article 911b, Title 25, Revised Civil Statutes of the State of Texas, 1925, as amended, if such 'Special Commodity' permit shall have been in force and effect on January 1, 1941, and if such person or predecessor in interest may desire to continue in the business of a motor carrier of such commodity or commodities shall file an application for a certificate of convenience and necessity under the terms of this Act within sixty (60) days after the effective date hereof, it shall be the duty of the Commission to issue without further proof a certificate authorizing the operation as a 'Specialized Motor Carrier' for the transportation of such commodity or commodities covered by the 'Special Commodity' permit held by the applicant, which 'Specialized Motor Carrier' certificate shall be issued to the applicant and include all the rights and privileges granted under said 'Special Commodity' permit." A careful reading of the portion of the Act of the 47th Legislature last above quoted will disclose that it, in legal effect, recognizes, and continues in force, certain "Special Commodity" permits issued prior to January 1, 1941, for the purpose only of constituting them a basis for having the Commsision issue to the holder a new certificate under Section 6, subdivision (d), Article 911(b), Vernon's Texas Civil Statutes. A further reading of such Act will disclose that it does not purport to recognize, or continue in force, all "Specialized Commodity" permits issued prior to January 1, 1941, but only such permits as were being operated under on such date. There is no escape from this construction of the statute because it plainly limits its coverage and benefits to the holders of such permits who *"may desire to continue in the business of a motor carrier,"* etc. Certainly the holder of a permit not being oper-

ated under could not obtain a new certificate under the Act of the 47th Legislature, 1941, because one not in the business of a motor carrier could not "desire to continue" in such business. Simply stated, the effect of the 1941 Act under discussion here was to allow all holders of "Special Commodity" permits issued prior to January 1, 1941, to use the same as a basis to secure new certificates if such old permits were being operated under at the time. Of course, old permits not renewed under the Act of the 47th Legislature no longer exist, or are in effect.

■ After this writ of error was granted, and while this cause was pending in this Court, the Act of the 47th Legislature, 1941, supra, became effective, and the Attorney General filed herein a sworn pleading wherein it is made known to us that after the effective date of the Act just mentioned, and within sixty days from such date, Hunter surrendered the permit here sought to be cancelled and annulled, and the Commission issued to him in lieu thereof "A Specialized Motor Carrier Certificate of Convenience and Necessity," as provided for by subdivision (b) of Section 4 of said 1941 Act. As we understand this record, the contestants of Hunter's original permit admit the truth of the above pleading. The Attorney General moves to dismiss this cause as moot because nothing could be attained either for or against any party to this litigation by passing on the validity or invalidity of the permit here contested.

It is evident that the Act of 1941 has effect to end or abolish all old permits of the class here involved, and to substitute therefor new certificates in instance where old permits were being operated under. Certainly it ought not to be held that the old permits were ended or abolished unless new certificates were authorized. It is therefore too evident to admit of debate that if the new certificate issued to Hunter is valid, the subject matter of this litigation, the old permit, has ceased to exist and this cause is moot. It therefore becomes necessary for us to determine the validity of the new certificate in order to determine whether or not this cause is moot.

It is contended that this case is not moot because the Commission had no jurisdiction in this instance to issue a new certificate based on the old permit while the validity of the old permit was in litigation. If the validity of the new certificate depended on the validity of the old permit, this might be true (we do not decide that question), but such is not the case, as we will later demonstrate. Certainly, if the Commis-

sion had a right to issue the new certificate based on the old permit, regardless of the prior validity or invalidity of the old permit, no interference with the jurisdiction of this Court is shown.

It is contended that the act of the Commission in issuing to Hunter a new certificate based on his old permit was void unless the old permit was valid. It is then contended that the old permit was invalid, and that the new certificate was, and is ,therefore void. In this connection, it will be noted that subdivision (b) of the Act of 1941, above quoted, only authorizes the issuance of new certificates if they are based on old permits "in force and effect on January 1, 1941." Simply stated, it is contended that new certificates under the 1941 Act must be based on old permits "in force and effect," and that an invalid certificate could not have been in force and effect. We cannot agree to this narrow construction of the statute. To our minds, it has the effect to recognize all old permits, valid or invalid, outstanding and being operated under on January 1, 1941. To give this statute any other construction would render it a vain and useless thing. Furthermore, when we view this statute from its four corners, it has effect to end all old permits, valid or invalid, and to provide for new certificates based on the old permits, if applied for within the sixty day period by operating holders.

It is contended by counsel for these contestants that that part of Subdivision (b), Section 4, of the Act of 1941, above quoted, which authorizes the Commison to issue new certificates, such as was issued in this instance, in lieu of and based on old permits issued under prior laws, violates the fourteenth amendment to the Constitution of the United States and also violates Section 19 of Article I of our State Constitution. As we interpret the argument of counsel for contestants, it attempts to support the above contention on the theory that the part of the Act of 1941 which authorizes the issuance of new certificates based on old permits constitutes unreasonable class legislation because it authorizes certificates of the kind here involved to be issued to the holders of old permits, regardless of the question of convenience and necessity, but requires a finding of convenience and necessity as to all certificates issued under the Act of 1941 not based on old permits. If we were to construe the Act of 1941 as authorizing the issuance of new certificates based on old permits, regardless of whether or not such old permits were being operated under, a very grave

question as to the constitutionality of the 1941 Act would be presented, but, as already shown, we construe such Act as only authorizing new certificates based on old permits where the old permits were being operated under on January 1, 1941. So construed, the Act of 1941 amounts to a reasonable legislative finding of convenience and necessity as applied to old permits which are authorized to be used as a basis for new certificates. In this connection, it is settled that the Legislature has power to make findings of fact as a basis for legislation. Browning v. Hooper, 269 U. S. 396, 70 L. Ed. 330, 46 S. C. R. 141; Harris County Flood Control District v. Mann, 135 Texas 239, 140 S. W. (2d) 1098.

It is evident from what we have said that we hold that this case is now moot. It is therefore ordered that the judgments of the district court and Court of Civil Appeals be reversed, set aside, and held for naught; and this cause be dismissed at the cost of the defendants in error.

Opinion delivered November 19, 1941.

Rehearing overruled January 14, 1942.