**RAILROAD COMMISSION OF TEXAS et al. v. RED ARROW FREIGHT LINES, Inc.**

No. 9348.

Court of Civil Appeals of Texas. Austin.

Dec. 16, 1942.

Rehearing Denied Jan. 6, 1943.

Gerald C. Mann, Atty. Gen., and George W. Barcus, Asst. Atty. Gen., for appellant Railroad Commission of Texas.

Kelley & Looney and L. Hamilton Lowe, all of Edinburg, for appellant J. H. Robinson Truck Lines, Inc.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellee.

BLAIR, Justice.

The Railroad Commission granted appellant Robinson Truck Lines, Inc., what was designated a "Reroute Order", which permitted it to operate motor freight services over certain highways between certain Texas cities as an alternative route. Appellant owned certificates of convenience and necessity to operate through and intermediate points freight services between the same cities, but over a more circuitous and longer route. The reroute order limited operation thereunder to through freight and by trucks used by appellant in the operation of its certificates over the longer route; and it was granted upon the application of appellant after notice, hearing, and a finding by the Commission that the public safety and the preservation of the highways along the longer route required the rerouting of this traffic. No application was made and the Commission refused to hear evidence or to find whether or not the public convenience and necessity required or needed the reroute service, the Commission construing the Motor Transportation Statutes (Art. 911b et seq., Vernon's Ann.Civ.St.) as not requiring it to determine as a basis for the reroute order that the public convenience and necessity required or needed such service. The trial court took the opposite view on the appeal of appellee Red Arrow Freight Lines, Inc., a competitor over a part of the reroute highways, from the reroute order, and held it to be invalid; hence this appeal.

The Motor Transportation Statutes do not vest in the Commission the power to grant appellant the authority to operate the reroute motor carrier service over the public highways involved in absence of the statutory prescribed application, notice, hearing, and a finding based upon substantial evidence that the public convenience and necessity require or need the reroute service. Appellant is a motor carrier common carrier of freight over certain public highways as defined in Sec. 1 of Art. 911b, as amended from time to time. (See Acts 1931, 42nd Leg., p. 480; Acts 1937, 45th

Leg., p. 651; Acts 1939, 46th Leg., p. 89; Acts 1941, 47th Leg., p. 713.) Sec. 2 provides that "no motor carrier * * * shall operate any motor-propelled vehicle for the purpose of transportation or carriage of property for compensation or hire over any public highway in the State except in accordance with the provisions of this Act." Sec. 3 provides that "no motor carrier shall * * * operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation." Sec. 4 and its various subsections authorize the Commission to "supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway * * * to prescribe rules and regulations necessary for the government of motor carriers," and "for safety of operations * * * in all matters affecting the relationship between such motor carriers and the shipping public that may be necessary in the interest of the public," and "in all matters whether specifically mentioned herein or not so as to carefully preserve, foster and regulate transportation and to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interest of the public." Sec. 5 provides that "no motor carrier shall hereafter operate as a common carrier for the transportation of property for compensation or hire over the public highways of this State without first having obtained from the Commission, under the provisions of this Act, a certificate declaring that the public convenience and necessity requires such operation." Sec. 5a and its various subdivisions also provide that no motor carrier common carrier shall operate except under a certificate of convenience and necessity; prescribe in detail the requirements which the application must show, and provide that "the Commission shall have no jurisdiction to consider, set for hearing, hear, or determine any application for a certificate of convenience and necessity * * * unless the application shall be in writing and set forth in detail the * * * facts" prescribed by Sec. c, subsections 1, 2 and 3. And Secs. (d) and (e) of said Section 5a read as follows:

"(d) Before any such application shall be granted, the Commission shall hear, consider and determine said application in accordance with Sections 8, 9, 11, 12, 13, 13a, 14, and 15 of Chapter 277, Acts of the Forty-first Legislature, Regular Session, as amended (Article 911b, Revised Civil Statutes of the State of Texas, 1925, as amended), and if the Commission shall find any such applicant entitled thereto, it shall issue certificate hereunder on such terms and conditions as is justified by the facts; otherwise said application shall be denied. The Commission shall have no authority to grant any application for a certificate of convenience and necessity authorizing operation as a 'Specialized Motor Carrier' or any other common carrier unless it is established by substantial evidence (1) that the services and facilities of the existing carriers serving the territory or any part thereof are inadequate; (2) that there exists a public necessity for such service, and (3) the public convenience will be promoted by granting said application. The order of the Commission granting said application and the certificate issued thereunder shall be void unless the Commission shall set forth in its order full and complete findings of fact pointing out in detail the inadequacies of the services and facilities of the existing carriers, and the public need for the proposed service. Likewise, the Commission shall have no authority to grant any contract carrier application for the transportation of any commodities in any territory or between any points where the existing carriers are rendering, or are capable of rendering, a reasonably adequate service in the transportation of such commodities.

"(e) Except where otherwise provided, applications for and holders of certificates of public convenience and necessity, as provided for in this Section, shall be subject to all of the provisions of the Act relating to common carriers by motor vehicle."

■ The above quoted language of parts of Art. 911b, as amended from time to time, clearly evidenced the intention of the legislature to require each motor carrier common carrier to first obtain a certificate of convenience and necessity to operate as such motor carrier over and on "any public highway in the State." Manifestly, the legislature intended that all operation under a certificate be confined to the highways therein described, and not to other highways as to which there had been no application, notice, hearing, and a finding by the

Commission that the public convenience and necessity required or needed the service or any part of the service authorized by the certificate. We are clear in the view that any substantial reroute of the service authorized by a certificate over another highway, or any new or additional service over another highway not called for in a certificate, is not authorized except upon an application, notice, hearing, and a finding by the Commission based upon substantial evidence that the public convenience and necessity require or need such new or substantial reroute service. This was our holding in the case of Railroad Commission v. Red Arrow Freight Lines, Inc., 96 S.W.2d 735, error refused, wherein this court held under facts entirely similar to the facts in the instant case that a similar reroute order was invalid because not based upon an application for and an order granting a certificate of convenience and necessity for such services. See also Railroad Commission v. Greyhound Lines, Tex.Civ.App., 92 S.W.2d 296. Further analysis of these cases is not necessary because they carefully review the authority of the Commission under the Motor Transportation Law, and speak for themselves.

Appellant contends, however, that the instant case may be distinguished on the facts from the case of Railroad Commission v. Red Arrow Freight Lines, supra. We find that the distinction is only one of degree and not on principle. The differences sought to be shown by appellant are (1) that in the former case the difference in mileage between the points served under the certificates and the reroute order was 120 miles, whereas in the instant case the difference is only 45 or 50 miles; (2) that the difference in time in the first case was 30 hours, whereas in the instant case it is one-half hour, but indisputably the time saved on the reroute service can be greater than one-half hour and can be by change of schedule much greater; and (3) that the difference in service in the first case was from second day service to overnight, whereas in the instant case there is practically no change, but as to this it is evident that the time required for the service can be shorter by the length of time it takes to travel 45 or 50 miles and over admittedly better roads, and where there is less traffic. Appellant also contends that the cases may be distinguished on the fact that we held in the former case that the reroute service in fact established a new

service, whereas in the instant case no new service was authorized; but in the instant case a new service over a shorter and better route is authorized by the reroute order, because a service is permitted over the reroute highways where none existed before the reroute order. Manifestly, these matters relate to differences of degree and not on principle. As pointed out in the Red Arrow case, supra, the element of time is important both as to the place of origin and at the point of destination in the shipment of merchandise and other property, and this is true whether the difference in time be small or great. A truck starting from a point of origin or reaching a point of destination 30 minutes, or an hour or more earlier than a truck of a competitor has an advantage, which is one of degree varying as to the length of time. There is also the element of cost of the operation of the vehicles over the old route and under the reroute order which the evidence showed would save appellant several hundred dollars per year, thus making this saving available for any legitimate use against appellee as a competitor serving all or a part of the same cities on the reroute highways.

■■ In this connection it is conceded by appellant that the reroute order does invade the rights of appellee as a competitor, but it is argued that "the only invasion of rights of appellee consisted of a slight saving to appellant in gasoline and depreciation"; but that "when this is counterbalanced by the primary duty of the Commission to promote safety and preserve the highways, as the undisputed testimony shows was accomplished by the reroute order in the case at bar, this alleged injury to appellee pales into insignificance." In support of this contention both the appellant and the Attorney General for the Commission cite particularly Sec. 4(b), Art. 911b, above quoted, as sustaining their views. If such a comparison were authorized, we think that the undisputed evidence shows that the advantage to appellant under the reroute order was substantial and not slight. We are of the view, however, that this comparison of injury with benefit to the public is not the issue to be determined as the basis for the reroute order; but as above stated the question here presented is whether the Motor Transportation Statutes vest in the Commission the power to grant a permanent and substantial reroute order for use of the highways except upon an application, notice, hearing, and a find-

ing based upon substantial evidence that the public convenience and necessity require or need the reroute service. On this question the statutes are plain and unambiguous and require a certificate of convenience and necessity to operate any motor carrier common carrier service "over any public highway in the State." A reroute order not based upon an application, notice, hearing, and a finding by the Commission that public convenience and necessity require or need the reroute service will not suffice for a certificate of convenience and necessity.

■■ It may also be observed in this connection that Sec. 4(b) merely provides for supervision and regulation of the transportation of property for compensation or hire over the highways by motor vehicle after a certificate of convenience and necessity for such service has been granted. This supervisory and regulatory power is general and relates to the interest of the shipping public with the motor carrier and "so as to carefully preserve, foster and regulate transportation and to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interests of the public." This power given the Commission, together with other powers given by Art. 911b, as amended, would authorize the Commission to relieve or discontinue any motor carrier service which had become unduly burdensome on the highways and to the safety of the public in the use of the highways. But this supervisory power does not authorize the Commission to reroute the burdensome and unsafe transportation service over other and different highways from those called for in a certificate, except upon an application, notice, hearing, and a finding by the Commission that the public convenience and necessity require the reroute service over the other and different highways. In the very nature of things the reroute service would affect the public use of the reroute highways; and where, as in the instant case, the reroute service would substantially interfere with the rights of carriers operating on a certificate of convenience and necessity over the reroute highways, a question of whether the public convenience and necessity require the reroute service necessarily arises; and the statutes specifically enjoin upon the Commission not to grant any motor carrier common carrier service, except upon application, notice, hearing, and a finding favorable thereto.

■ Both appellant and the Railroad Commission raise the point that appellee is estopped to question the power of the Commission to grant the reroute order in question, because on two subsequent occasions it applied for and obtained similar reroute orders over other highways not called for in its certificates of convenience and necessity. This contention is not sustained for two reasons. In the first place the record in the instant case does not show the reroute orders to be similar, nor that appellant has been injured thereby. In the second place the fact that both appellee and the Commission may have wrongfully construed the statutes in those instances as authorizing the Commission to grant substantial reroute orders without showing the public convenience and necessity therefor, would not deprive the appellee by this direct proceeding from attacking the validity of the reroute order in suit. Particularly is this so since these are public policy statutes, which affect all motor carriers and the public interest therein and in its use of the highways. These interests demand that the Commission correctly construe and not act beyond the powers granted it by the Motor Carrier Law. To permit appellant or appellee, or any motor carrier and the Commission to continue to place a wrong construction on the statutes under some sort of rule of estoppel would in effect deprive the courts of its exclusive right to construe and ultimately determine the proper construction to be placed on the statutes, which would be contrary to the settled rule that the matter of the construction of statutes and other laws is one which the court must ultimately determine, and is one solely for the court. This is a duty which the court must exercise and can be neither surrendered nor waived under our constitution, which divides governmental powers into three departments—the legislative, the executive, and the judicial.

■ Another point raised by appellant Robinson Truck Lines, Inc., only is that the trial court erred in refusing its third motion for a continuance because local counsel employed by it was engaged in the trial of another case. Local counsel was not employed until after the first continuance was granted. No showing is made that appellant was injured by reason

of the refusal to continue. The controlling facts were in the main undisputed and the questions presented are questions of law. No abuse of the discretion of the trial court not to continue the case is shown.

The judgment of the trial court is affirmed.

Affirmed.