RAILROAD COMMISSION OF TEXAS ET AL V.
THE ALAMO EXPRESS, INCORPORATED, ET AL

No. A-6269. Decided January 15, 1958.
(308 S.W. 2d Series 843)

*Will Wilson*, Attorney General, *James N. Ludlum* and *Houghton Brownlee, Jr.*, Assistants Attorney General, for Railroad Commission of Texas, *Joe G. Fender*, of Houston, for Gulf Southwestern Transportation Co., Petitioners.

The Court of Civil Appeals erred in holding that the use of the device of incorporation by reference rendered the order in question invalid under Article 911b, V.C.S.. Thompson v. Railroad Commission, 150 Texas 307, 240 S.W. 2d 759; Smith v. Paschal, 1 S.W. 2d 1086; Trapp v. Shell Oil Co., 145 Texas 270, 198 S.W. 2d 420.

*Herbert L. Smith* and *Phillip Robinson*, of Austin, for respondents.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This cause arises out of the same facts and circumstances as those set out in our cause No. A-6268, styled Alamo Express, Inc., et al v. Union City Transfer, et al this day decided, this volume p. 234, 309 S.W. 2d 815, with the differences herein noted.

Petitioners, except the Railroad Commission, were not parties to the proceedings had by the Railroad Commission which resulted in the granting of the amended certificates to Union City Transfer and others in our cause No. A-6268.

Other than the Railroad Commission, the petitioners, each a specialized motor carrier with an existing certificate to transport oil field equipment, including the 85 named commodities referred to in the Union City Transfer cause, filed their respective applications to amend their respective certificates so as to allow each of them to transport the same 130 commodities involved in the Union City Transfer cause within the limits of their respective certificates. Notices of hearing were duly issued on each application; a hearing was had before an examiner for the Commission; a report was made to the commission, and the amendments sought to be made were granted by the Commission. The dates for each of the respective petitions are as follows:

Petitioner Gulf Southwestern Transportation Company filed its application on March 3, 1954; the hearing was held on April 15, 1954 and the amended certificate was granted on November 16, 1954;

Petitioner Atlas 'Truck Line, Inc. filed its application on October 28, 1954; the hearing was held on December 14, 1954 and the amended certificate was granted on January 10, 1955;

Petitioner L. R. Galbreath, d/b/a L. R. Galbreath Company filed his application on January 21, 1955; hearing was had on February 23, 1955 and the amended certificate was granted on March 17, 1955.

In the Union City Transfer et al cause all applications were filed prior to the Houston hearing on March 15, 1954. We see that all of the certificates granted to the trucking petitioners herein were granted more than six months after the granting of the certificates in the Union City Transfer, et al cause. Following the granting of the amended certificates herein, the respondents Alamo Express, Inc. and 24 other motor carriers filed their suits in a district court of Travis County, Texas, in accordance with Section 20 of Article 911 b, Vernon's Annotated Civil Statutes, protesting and attacking the action of the Commission in granting the amended certificates. These suits were consolidated with the suit filed attacking and protesting the granting of the amended certificates to Union City Transfer and the 128 other specialized carriers, and all suits were tried by the district court as one cause. In the case at bar, the trial court, after the trial of the case, entered its order annulling the action of the Railroad Commission and vacated and set aside the order granting the amended certificates. From this action of the trial court, the Railroad Commission and the three above named petitioners appealed to the Court of Civil Appeals at Austin, Texas. That Court affirmed the action of the trial court in setting aside the amended certificates. 298 S.W. 2d 926.

Although petitioners herein and appellants in the Court of Civil Appeals had six assignments of error in that Court, their application in this Court contains only one assignment of error. To this assignment the respondent counters that in all events judgment of the Court of Civil Appeals must be affirmed because "the 'adoption' procedure followed by the Commission in granting the applications involved is without statutory basis and is directly contrary to the administrative procedure required by the 1941 Specialized Motor Carrier Act," and such procedure amounted to no hearing at all. The trial court made findings of fact of which the following are the most pertinent and material to this cause:

(1) No public witnesses appeared and testified in support of such applications;

(2) Each adoption defendant was permitted to state to the Commission that he desired to adopt the record made before the Commission at Houston on March 15-19, 1954, and in most instances that statement was made by the attorney representing the particular adoption defendant, without the presence before the Commission of the applicant or his duly authorized representative, other than his attorney;

(3) Protesting carriers at each of the hearings held in connection with an adoption defendant were given no right to cross-examine the applicant or his duly authorized representative;

(4) That the Commission, in issuing order to said adoption defendants, failed to make detailed fact findings on the inadequacies of existing services, but merely issued an order authorizing the particular adoption defendant to render the same service as the "Specialized Motor Carrier Defendants in the Main Cause" without having before it evidence of a substantial nature reflecting that the services and facilities of the existing carriers were inadequate; that there existed a public necessity for such service; and that public convenience would be promoted by the granting of the application;

(5) The orders issued by the Railroad Commission of Texas granting the applications of each of the adoption defendants are not reasonably supported by substantial evidence before the Commission; and

(6) The hearings held by the Railroad Commission of Texas on the applications of each of the adoption defendants were not legal hearings and were conducted in such a way and in such a manner as to deprive protesting carriers, including the plaintiffs herein, of due process of law.

The trial court made the following conclusions of law:

"11. The court concludes as a matter of law that the orders of the Railroad Commission of Texas, purporting to grant to the adoption defendants authority to transport certain additional commodities, are invalid and void, in that the Commission did not conduct with respect to said application of the adoption defendants, legal hearings, and with respect to the hearings held, that plaintiffs were not afforded due process of law. The court further concludes as a matter of law that with respect to the applications of the adoption defendants, the Railroad Commission of Texas did not have before it evidence of a substantial nature so as to invoke the jurisdiction of the Com-

mission and that the orders issued by the Railroad Commission of Texas to the adoption defendants are illegal and void. Further in this connection, the court concludes that the orders issued by the Railroad Commission of Texas to the adoption defendants, do not meet the requirements of Article 911b V.C.S."

From the findings of fact made by the trial court we see no such hearing was had as is required by the statute prior to action by the Railroad Commission on the application. The application filed by each specialized carrier and the notices of hearing on the applications sent out by the Railroad Commission set forth that each applicant was seeking to adopt the pleadings and evidence in the Union City Transfer applications and hearing. At the time and place specified by the notices herein, no public witnesses appeared and testified. Each applicant requested and was given permission to adopt the record in the Union Transfer case. The common carriers protesting the granting of the certificates were thereby denied the right to cross-examine the applicants, or their representatives. The common carriers could not cross-examine the witnesses shown to have testified in the record of the Union City Transfer case because such witnesses did not testify in person in this hearing. The parties in the Union City Transfer record were different from these applicants. No evidence, save the record in the Union City Transfer case, was heard on the (1) inadequacy of existing services, (2) public convenience to be served, and (3) necessity for the services sought to be rendered by applicants. It was said in the case of Railroad Commission of Texas v. Red Arrow Freight Lines, Inc., Texas Civ. App., 1936, 96 S.W. 2d 735; wr. ref., in speaking of Article 911b:

"The statute makes it mandatory upon the Commission to give notice to interested parties and thereafter to hear and determine specified facts involved in the issue of convenience and necessity before it can grant this character of certificate; and, where the authority applied for comes fairly within the purview of the statute, compliance with its mandatory provisions is essential to the validity of the Commission's order, at least when brought in question in a direct proceeding, by one entitled by statute to have it reviewed."

Article 911b, Sec. 5a(d) provides in part: "* * * The Commission shall have no authority to grant any application for a certificate of convenience and necessity authorizing operation as a 'Specialized Motor Carrier' * * * unless it is established by substantial evidence (1) that the services and facilities of the

existing carriers serving the territory or any part thereof are inadequate; (2) that there exists a public necessity for such service, and (3) the public convenience will be promoted by granting said application. * * *"

In this case the Commission had before it only the record in the Union City Transfer case, and heard no other evidence. In cases under the Motor Carrier Act, the Commission must hear evidence on the application before it in order to have power to enter an order. Miller v. Tarry, Texas Civ. App., 191 S.W. 2d 501, 508, 2nd. col., ref., n.r.e.; Railroad Commission of Texas v. Red Arrow Freight Lines, Inc., supra; Railroad Commission of Texas v. Red Arrow Freight Lines, Inc., 1942, Texas Civ. App., 167 S.W. 2d 249(1), ref., w.o.m. Otherwise the Commission could not comply with the statutory requirement that its order entered on the application "shall set forth * * * full and complete findings of fact pointing out in detail * * *" certain facts obtained from the evidence. Art. 911b, Sec. 5a(d).

The orders of the Railroad Commission granting the certificates to the specialized motor carriers, not being based on any evidence, are arbitrary, invalid and void. They were made by the Commission in plain violation of the mandatory duty imposed by this particular statute. Railroad Commission of Texas v. Texas & P. Ry. Co., 1941, 138 Texas 148, 157 S.W. 2d 622, 623-24.

The judgments of both courts below are affirmed.

Opinion delivered January 15, 1958.

MR. JUSTICE WALKER concurring.

I do not think it should be said that the Railroad Commission heard no evidence and that its order is void for that reason. It is my opinion, however, that the protesting common carriers were not accorded procedural due process, and for that reason I concur in the affirmance of the judgment of the Court of Civil Appeals.

Opinion delivered January 15, 1958.