Allen, J.
 

 Upon error proceedings to cases arising in courts of common pleas and later heard in the Court of Appeals, this court will not weigh the evidence. Upon error proceedings to this court from an order of the Public Utilities Commission, no intermediate court has had an opportunity to review and weigh the evidence. Hence in such an error proceeding, unless this court reviews the evidence, the plaintiff in error is deprived entirely of the consideration of that feature of the case. It is for this reason that it has previously been held that in an error proceeding filed in this court to an order of the Public Utilities Commission the inquiry in the Supreme Court should be not to determine whether there is a scintilla of evidence to support the finding of the Commission, but to determine whether the findings of the Commission on the facts are reasonably supported by the evidence adduced at the hearing.
 
 Ohio Utilities Co.
 
 v.
 
 Public Utilities Commission,
 
 
 *701
 
 108 Ohio St., 145, 140 N. E., 497. However, “findings of the Commission should not be disturbed unless they are so manifestly against the weight of the evidence, and so clearly unsupported by it, as to show misapprehension, or mistake, or willful disregard of duty. This court has not had the opportunity of observing the demeanor of the witnesses, and is therefore not as competent to weigh the evidence as the Commission should be.”
 
 Ohio Utilities Co.
 
 v.
 
 Public Utilities Comm
 
 ission,
 
 supra; Village of St. Clairsville
 
 v.
 
 Public Utilities Commission,
 
 102 Ohio St., 574, 132 N. E., 151.
 

 No question of deciding between conflicting evidence arises in this case, for the material facts are not controverted. They are as follows:
 

 Upon November 7, 1924, the River Road Transportation Company applied to the Public Utilities Commission of Ohio for a certificate of public convenience and necessity, authorizing it to operate a motor transportation line between 'Cincinnati, Ohio, and the Ohio-Indiana state line, at a point of intersection on the Lawrenceburg road. The order was granted, with the restriction that no local service be furnished between Cincinnati, Ohio, and Anderson’s Perry, Ohio.
 

 Thereupon the plaintiff in error filed a petition in error, the principal ground of which is that the finding and order of the Commission were contrary to the evidence. Plaintiff in error claims that the record shows that no public need exists, and no public convenience not already adequately met by the service of other public utilities now operating in the same area and along the same
 
 *702
 
 route will be served by the proposed motor bus service in the area and along the route in and upon which the certificate was granted. The plaintiff in error also claims that the application of the River Road Transportation Company, upon which the certificate was issued, is not in conformity with law.
 

 The territory covered by the application for the certificate is a strip of road about 22 miles in length, from Cincinnati to the Ohio-Indiana state line, directly connecting with Aurora, Lawrence-burg, and Dillsboro in Indiana. The villages between Anderson’s Ferry, in Ohio, and the Indiana line, have a combined population, as shown by the record, of approximately 6,700 people.
 

 It appears that the entire route from Cincinnati to Dillsboro, through Lawrenceburg and Aurora, is served by the Baltimore & Ohio Railroad, which has four trains each day between Dillsboro and 'Cincinnati, making- all the local stops between Aurora, Lawrenceburg, and Cincinnati. The schedules are so adjusted as to meet the requirements of commuters for going to work in the morning and coming home in the evening, and commuters’ tickets at greatly reduced rates are sold. On the Big Four Railroad, service, practically parallel to that of the Baltimore & Ohio, is rendered between Cincinnati and Lawrenceburg and Aurora, its lines also touching the town of Cleves. The Big Four Railroad furnishes the same commuting service as the Baltimore
 
 &
 
 Ohio Railroad, operating upon practically identical schedules. It is the uncontroverted testimony of the general passenger agent' of the Baltimore & Ohio that the licensing and
 
 *703
 
 developing of motor bus service over this road will result in injuring and ultimately eliminating the steam railroad service. His testimony upon this point is as follows:
 

 “Ever since the war the Baltimore & Ohio has maintained these two commuter trains between Cincinnati, Lawrenceburg, and Aurora, simply to take care of this commuter business. The only interest we have in the application of auto busses, if they are established and perform the service necessary to handle the business, is to permit our company to withdraw the trains, and we have no further objections. "We operate the service at a loss, and we would be very glad to take the trains off entirely and let the bus lines or the electric lines have the travel. We are not concerned very much in the traffic within Ohio. We would like to get rid of it, but we naturally have some of it that is not on the hard roads, but, if the bus lines are established between Aurora and Lawrenceburg and Cincinnati, it simply means that they will attract the major portion of the business which is the history every place else on our road, and then we would naturally withdraw our service or ask permission to withdraw it.”
 

 Parallel to these two railroad systems, the Cincinnati, Lawrenceburg & Aurora Traction Company operates traction oars between Anderson’s Perry and Cincinnati, and Lawrenceburg and Aurora, in Indiana, at a half hour schedule, from early •morning until late at night, between Anderson’s Perry and Valley Junction, and hourly between Valley Junction and Lawrenceburg and
 
 *704
 
 Aurora. This road has paid no interest on its bonds since July, 1913, and has been in the hands of receivers for many years. The traction road connects at Anderson’s Ferry with the Cincinnati Traction Company, which furnishes prompt connections for .through passengers. From Anderson's Ferry the Cincinnati Traction Company operates a line into the city of Cincinnati at intervals of thirteen minutes, with additional service in the rush hours.
 

 There are additional transportation facilities along this route. The Anderson’s Ferry Transit line operates between Anderson’s Ferry and Seventh and Race streets in Cincinnati. The Ohio Indiana Bus Company operates from Dillsboro, Indiana, into Cincinnati, Ohio, and 'Charles Pratt operates a bus line from Madison, Indiana, into Cincinnati, Ohio. These two bus lines offer a through service.
 

 The certificate for the River Road Transportation Company was asked for by Mr. Deppe, the president of the said company and one of the xeceivers of the Cincinnati, Lawrenceburg
 
 §s
 
 Aurora Traction Company. Although Deppe was. the applicant for this certificate, he was unwilling to state that there was any need for additional service along this route. His testimony was as follows:
 

 “Q. You do not know what necessity exists for this service, do you? A. We are willing to find out. * * *
 

 “Q. Well, you don’t know of any special reason then, why you should have service when there is already service provided? A. I do xxot; I contended
 
 *705
 
 that when, in fact, they granted that original certificate.”
 

 Proceeding to consider the evidence, therefore, with a view to determining whether the findings of the -Commission upon the facts are reasonably supported thereby, we find upon the uncontroverted testimony that the route in question is amply supplied with transportation service, since two motor bus lines and an interurban traction company already operate along the route, and since two well-established railroads, which have baggage and other facilities that can never be duplicated in automobile traffic, furnish two trains each way every day along the same route, making all local stops. Moreover, here is a case in which there is not one syllable in the record showing the necessity of increasing the transportation service in this district. The applicant himself refuses to testify that there is any need for granting this certificate to the River Road Transportation Company.
 

 It has repeatedly been stated that this court will not substitute its judgment for that of an administrative power created pursuant to an act of the Legislature as to matters within its province. Before the court will interfere with an order of the Railway Commission, or its successors, it must appear from a consideration of the record that the action of the Commission was unlawful or unreasonable.
 
 Hocking Valley Ry. Co.
 
 v.
 
 Public Utilities
 
 Commission, 92 Ohio St., 362, 110 N. E., 952.
 

 Under the facts herein we feel that the evidence, taken as a whole, is overwhelmingly opposed to the
 
 *706
 
 granting of the order. Not only is the present service adequate, but, if the present service is deranged, there is evidence to the effect that the railroad service may be discontinued, and that the already unprofitable service of the interurban street railway may be sadly crippled.
 

 Since there is no substantial foundation in the evidence for the order complained of, we hold that the Commission acted unreasonably and unlawfully in making the same, and that the order should therefore be reversed.
 

 Order reversed.
 

 Marshall, C. J., Jones, Matthias, Kinkade and Robinson, JJ., concur.